IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CR-16-45-D |
| ) | |
| DEANDRE SHAVON THOMPSON, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Before the Court is Defendant Deandre Shavon Thompson's Motion to Suppress Statement [Doc. No. 28]. Defendant seeks to suppress evidence of statements he made to detectives of the Oklahoma City Police Department (OCPD) during an interview conducted before any federal charge was filed. The government has timely opposed the Motion in a sealed response brief [Doc. No. 35], to which Defendant has replied [Doc. No. 37].

On May 2, 2016, the Court conducted an evidentiary hearing regarding the Motion. Defendant appeared personally and through appointed counsel, Marna Franklin. The government appeared through Assistant United States Attorney Ashley Altshuler. The Court received the testimony of OCPD Detective Chris Grimes, who conducted the interview that is the subject of Defendant's Motion. The government also directed the Court's attention to a video recording of the subject interview, which was conventionally filed of record [Doc. No. 36] with its response brief. Upon consideration of the evidence, the case record, and the parties' arguments, the Court rules on the Motion as follows.

**Findings of Fact**

Det. Grimes is assigned to OCPD's gang/criminal intelligence unit. He was contacted by OCPD officers after Defendant was apprehended on January 31, 2016. Det. Grimes wanted to interview Defendant as part of an investigation of a drive-by shooting in which Defendant and his twin brother, co-defendant Dearian Deon Thompson, had been identified as possible suspects. Defendant was arrested on outstanding warrants at approximately 4:30 p.m. on January 31, 2016. Det. Grimes arrived at OCPD headquarters soon after he was contacted about interviewing Defendant. The interview began shortly after 9:00 p.m. and lasted approximately one and one-half hours.

Defendant was seated in an interview room in handcuffs when Det. Grimes and another OCPD detective, Keith Medley, entered. It appeared to Det. Grimes that Defendant was tired or sleeping; he was slouched in a straight-backed chair behind an interview table. Det. Grimes began by removing Defendant's handcuffs and offering him something to drink.[1] Det. Grimes then explained that OCPD was "trying to figure out some stuff" and "just trying to get some clarification." *See* Digital Video Recording [Doc. No. 36], 11:19-26. Defendant immediately asked whether he needed a lawyer. Det. Grimes did not answer the question but instead said, "[W]e're going to read you *Miranda*." *Id*. 11:39-40.

Before reading a *Miranda* warning, Det. Grimes stated: "This is just to kinda get a background of what we're going to ask you – to get a background on what's been going on

---

[1] Defendant later asked for coffee, which was provided to him.

the last week or so." *Id*. 11:50-56. Det. Grimes also stated the purpose of the interview was to get "a timeline" of events and to "either disprove" or "verify what people are telling me." *Id*. 12:02-06. Defendant was not informed he was a shooting suspect or under investigation for a firearms offense. Det. Grime also prefaced the *Miranda* warning by stating, "This is very simple. This protects you and me both." *Id*. 12:25-27. After the warning was read, Defendant answered affirmatively when Det. Grimes asked if Defendant understood and if he wanted to talk to Det. Grimes "about last week" and "give [him] a rundown of where you and your brother have been." *Id*., 12:52-56.

In the video recording of the interview, Defendant exhibits no hesitancy about talking to the detectives. He made no attempt to terminate the interview and did not unequivocally request a lawyer. The detectives conducted the interview in a conversational tone, and Defendant cooperated fully in answering their questions. No coercive tactics, accusatory or demanding tones, or raised voices were used. Det. Grimes testified that Defendant did not appear to be under the influence of drugs or alcohol, and did not appear to be impaired by mental health issues or intellectual deficits. The video recording supports this testimony. Defendant seemed to understand the detectives' questions and gave appropriate answers.

## Effective *Miranda* Waiver

Defendant stands charged in Count 1 of the Indictment with being an illegal drug user or addict in possession of firearms in violation of 18 U.S.C. § 922(g)(3). Defendant asserts that the OCPD detectives obtained statements from him through a custodial interrogation

3

conducted in violation of *Miranda v. Arizona*, 348 U.S. 437 (1966). Although a *Miranda* warning was given, Defendant contends he did not knowingly and voluntarily waive his *Miranda* rights under the totality of the circumstances, particularly in light of statements by Det. Grimes that seemed to contradict the warning and limit the scope of the interview. Defendant presents educational records from 2013 showing his scores on an assessment of word recognition, reading comprehension, and reading vocabulary fell well below the grade level for his age. Defendant argues that his Fifth Amendment "waiver was ineffective due to deceptive and misleading comments by law enforcement that affected [his] comprehension of the consequences of relinquishing his right to remain silent." *See* Def.'s Mot. Suppress [Doc. No. 28], p.7.

Where a custodial statement is obtained without an attorney present, "a heavy burden rests on the government to demonstrate that the defendant knowingly and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel." *See Miranda*, 384 U.S. at 475; *see also N.C. v. Butler*, 441 U.S. 369, 373 (1979). However, the government's "burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of [the] *Miranda* doctrine . . . [is] only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). As stated by the Tenth Circuit:

> To establish a voluntary waiver of Fifth Amendment rights, the government must show (1) that the waiver was the product of free and deliberate choice rather than intimidation, coercion, or deception; and (2) that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving. Only if the totality of the circumstances surrounding

the interrogation shows both an uncoerced choice and the requisite level of comprehension can a waiver be effective.

*United States v. Toro-Pelaez*, 107 F.3d 819, 825 (10th Cir. 1997) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).  The Tenth Circuit has also identified appropriate circumstances for consideration:

> In determining whether rights were voluntarily waived, we consider: the suspect's age, intelligence, and education; whether the suspect was informed of his or her rights; the length and nature of the suspect's detention and interrogation; and the use or threat of physical force against the suspect.

*United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010).

In this case, Defendant was read a statement of his *Miranda* rights and was expressly told he was free to stop the interview at any time.  The video recording shows Det. Grimes emphasized this last point during the *Miranda* warning.  Although Defendant has presented evidence of poor reading comprehension and literacy skills, there is no evidence to suggest that Defendant's capacity to determine for himself whether to speak with the detectives and answer their questions was impaired in any way.  Further, despite Defendant's young age of 18 years, Defendant admitted during the interview he had prior experience with the criminal justice system beginning at age 13, and the government has presented evidence of his multiple interactions with law enforcement and juvenile justice authorities before reaching adulthood.  Nothing about the circumstances of the custodial interrogation in which the statements were made suggests that Defendant was coerced or his right of self-determination was impaired.   To the extent Defendant points to information unknown to him (such as a

determination by OCPD officers that there was probable cause to establish a firearms offense), "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Moran*, 475 U.S. at 422. Further, the failure to inform Defendant that his drug use or gun possession might form the basis of a criminal charge was not "the kind of trickery that can vitiate the validity of a waiver." *Id*. (internal quotation omitted). The Supreme Court has "never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Id.*

Under the totality of the circumstances, the Court finds Defendant made a voluntary decision to speak to the OCPD detectives with full awareness and understanding of the information required by *Miranda* and the consequences of relinquishing his constitutional rights. Therefore, the Court finds Defendant's *Miranda* waiver was valid and effective.

**Voluntariness of Incriminating Statements**

Defendant's Motion also appears to challenge whether his incriminating statements were voluntarily made. Upon timely request, a defendant is entitled to an evidentiary hearing outside the presence of a jury to determine the voluntariness of a confession. *See Jackson v. Denno*, 378 U.S. 368, 376-77 (1964).

The burden is on the government to prove by a preponderance of the evidence that a defendant's statements were voluntary. *See United States v. Williams*, 576 F.3d 1149, 1162

(10th Cir. 2009); *United States v. Pettigrew*, 468 F.3d 626, 633 (10th Cir. 2006). "The voluntariness of a statement depends upon an assessment of 'the totality of all the surrounding circumstances' including 'both the characteristics of the accused and the details of the interrogation.'" *United States v. Cash*, 733 F.3d 1264, 1280 (10th Cir. 2013) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); internal quotation omitted). "In applying a totality of circumstances analysis, [the Tenth Circuit has] considered (1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to any physical punishment." *Cash*, 733 F.3d at 1280-81 (internal quotation omitted); *see Schneckloth*, 412 U.S. at 226; *see also Yarborough v. Alvarado,* 541 U.S. 652, 668 (2004); *Williams*, 576 F.3d at 1162. The critical question is whether a defendant's statement was freely made or whether his "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth*, 412 U.S. at 225; *see United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006).

Having conducted a hearing regarding the circumstances surrounding Defendant's incriminating statements, the Court finds that the statements Defendant made during the January 31, 2016 interview by the OCPD detectives were entirely voluntary. Defendant was advised of his constitutional rights, agreed to answer the detectives' questions, and did so freely. The interrogation was not conducted in a threatening or coercive manner. Although it occurred in an interview room at OCPD headquarters, any suggestion that Defendant felt

intimidated is negated by the fact that he chatted with the detectives in a conversational tone and volunteered information, such as his marijuana use, before being questioned about it. As stated *supra*, there is no evidence to suggest Defendant's poor literacy skills or other mental impairment affected his ability to determine for himself whether to speak with the detectives. And despite Defendant's young age, he had prior experience with the juvenile justice system and law enforcement authorities. Nothing about the length of his detention or the circumstances under which the statements were made suggests that Defendant was coerced or that his right of self-determination was impaired.

Under the totality of the circumstances shown by the evidence, the Court finds the incriminating statements made by Defendant during the January 31, 2016 interview were freely and voluntarily made.

**Conclusion**

For these reasons, the Court finds that Defendant's waiver of *Miranda* rights was voluntary and effective and Defendant's incriminating statements were voluntary.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress Statement [Doc. No. 28] is DENIED.

IT IS SO ORDERED this 4th day of May, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE